# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WALTER M. SHAW,<br><br>                          Plaintiff,<br>  vs.<br><br>COUNTY OF SAN DIEGO; ALPINE SANITATION DISTRICT; SAN DIEGO FLOOD CONTROL DISTRICT; and DOES 1-100 ,<br><br>                          Defendant. | CASE NO. 06-CV-2680-MMA(POR)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

On April 27, 2007, Plaintiff Walter M. Shaw ("Plaintiff") filed a First Amended Complaint against Defendants County of San Diego, the Alpine Sanitation District, and the San Diego Flood Control District (collectively "Defendants"). Presently before the Court is Defendants' motion for summary judgment, filed March 12, 2009, pursuant to Federal Rule of Civil Procedure 56 as to all causes of action alleged in the First Amended Complaint [Doc. No. 46]. Plaintiff opposes the motion [Doc. No. 48]. Defendants' filed a reply [Doc. No. 49]. For the following reasons, the Court **GRANTS** Defendants' motion for summary judgment.

## BACKGROUND

The issues before the Court involve approximately 14 acres of land ("property") in San Diego County that was once owned by Plaintiff. (Amended Complaint ("AC") ¶ 8.) Starting in the 1980's, developers began constructing a subdivision called Crown Hills adjacent to Plaintiff's

property. (*Id.* ¶ 30) On December 10, 1984, an Environment Impact Report ("EIR") stated that prior to the approval of the final subdivision map the developer was required to provide proof of sewer service availability and payment for the extension of lines to the Crown Hills subdivision.

The record indicates that on February 1, 1985 the County Planning Commission approved the tentative map for the Crown Hills subdivision at a public hearing. Plaintiff and neighboring property owners were mailed notices of the public hearing and notice of the hearing was published. On March 6, 1985, the Board of Supervisors approved the subdivision map and certified the EIR prepared for the subdivision. At a public hearing on July 29, 1987 Defendants approved the final development map for the subdivision.

Plaintiff alleges that in 1985 in an effort to comply with the EIR and avoid constructing a sewer line pump, Defendants fraudulently created a map which indicated a preexisting sewer line across the property that connected an existing main sewer line to the subdivision. (*Id.* ¶ 38) Plaintiff claims that he did not become aware of the alleged use of the fraudulent map until sometime in 2001. At some time after the creation of the alleged fraudulent map, Plaintiff attempted to create a site preparation map of his property. Plaintiff was required to obtain approval by Defendants for Plaintiff's site preparation map. Plaintiff alleges that Defendants conditioned the approval of his site preparation plan on Plaintiff granting a public easement through his property. (*Id.* ¶ 34) Plaintiff granted a sewer easement to Defendant Alpine Sanitation District which was recorded on March 27, 1986 and accepted as a public sewer on December 1, 1993. Plaintiff further alleges that Defendants placed a lien on his property in 1989 to finance the construction of the sewer line. (*Id.* ¶ 45) Plaintiff claims that the lien was improper because Defendants had responsibility for financing and maintaining the sewer line. (*Id.*)

On December 27, 2001, Plaintiff commenced a series of lawsuits in state court. First, Plaintiff filed a tort claim against Defendant County of San Diego. In August of 2002, Plaintiff filed a complaint for damages against the County, alleging violation of a mandatory duty, negligence, and inverse condemnation. Plaintiff then filed an amended complaint against the County on April 23, 2003, adding an additional claim for breach of contract. On November 4, 2003, the state trial court granted summary judgment for the County as to all causes of action.

Plaintiff, proceeding pro se, appealed the judgment in January 2004. Plaintiff first raised the issue of the allegedly fraudulently created map in his January 2004 appeal. The appellate court refused to consider the merits of the claim because Plaintiff had not plead properly a cause of action based on the fraudulent map allegation at the trial court level. On July 15, 2005, the appellate court issued an order affirming the trial court's decision and a rehearing petition was subsequently denied on August 9, 2005. Plaintiff then appealed to the California Supreme Court, which denied his petition for review on October 12, 2005. As a last effort, Plaintiff filed a petition for writ of certiorari with the U.S. Supreme Court, which was denied on April 27, 2006. Subsequently Plaintiff filed a petition for rehearing, which was denied on July 31, 2006.

On December 8, 2006, Plaintiff, again proceeding pro se, filed a three-count complaint in this Court against Defendants alleging: 1) use of a fraudulent map in violation of the Fifth Amendment Takings Clause; 2) use of a fraudulent map in violation of the California Subdivision Map Act; 3) Fraudulent Concealment of a mandatory duty; and 4) taking of property in violation of the Fifth and Fourteenth Amendment rights to due process. [Doc. No. 1] Defendants filed a motion to dismiss, [Doc. No. 6], which the Court granted without prejudice on February 27, 2007. Plaintiff then filed an amended complaint on April 27, 2007. [Doc. No. 10] Defendants filed a second motion to dismiss Plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on May 7, 2007. On August 16, 2007, the Court granted Defendants' motion to dismiss Plaintiff's Takings Clause claim, but denied the motion as to Plaintiff's state law claims and his federal Due Process claim. [Doc. No. 14]. On March 12, 2009 Defendants' filed a motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56 on all remaining causes of action [Doc. No. 46]. Plaintiff opposes the motion [Doc. No. 48]. Defendants' filed a reply [Doc. No. 49].

**II.     DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**A.     LEGAL STANDARDS**

*1.     SUMMARY JUDGMENT*

Pursuant to Federal Rule of Civil Procedure 56(c), a party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

1  affidavits, if any, show that there is no genuine issue as to any material fact and that the moving
2  party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  It is beyond dispute that
3  "[t]he moving party bears the initial burden to demonstrate the absence of any genuine issue of
4  material fact." *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007)(citation
5  omitted). "Once the moving party meets its initial burden, . . . the burden shifts to the nonmoving
6  party to set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that
7  there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)
8  (internal quotation marks and citations omitted).

9        A mere scintilla of evidence is not sufficient "to defeat a properly supported motion for
10 summary judgment; instead, the nonmoving party must introduce some 'significant probative
11 evidence tending to support the complaint.'" *Fazio v. City & County of San Francisco*, 125 F.3d
12 1328, 1331 (9th Cir. 1997) (quoting *Anderson*, 477 U.S. at 249, 252). Thus, in opposing a
13 summary judgment motion it is not enough to simply show that there is some metaphysical doubt
14 as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586
15 (1986) (citations omitted). However, when assessing the record to determine whether there is a
16 "genuine issue for trial," the court must "view the evidence in the light most favorable to the
17 nonmoving party, drawing all reasonable inferences in h[er] favor." *Horphag*, 475 F.3d at 1035
18 (citation omitted). On a summary judgment motion, the court may not make credibility
19 determinations; nor may it weigh conflicting evidence. *See Anderson*, 477 U.S. at 255. Thus, as
20 framed by the Supreme Court, the ultimate question on a summary judgment motion is whether the
21 evidence "presents a sufficient disagreement to require submission to a jury or whether it is so
22 one-sided that one party must prevail as a matter of law." *Id*. at 251-52.

23       ***2.    Standards Applied for Pro Se Litigants***

24       Pro se litigants "must be ensured meaningful access to the courts." *Rand v. Rowland*, 154
25 F.3d 952, 957 (9th Cir. 1998) (en banc). In the context of a motion for summary judgment,
26 "[d]istrict courts are obligated to advise *prisoner* pro per litigants of Rule 56 requirements."
27 *Klingele v. Eikenberry*, 849 F.2d 409, 411-12 (9th Cir. 1988) (citing *Hudson v. Hardy*, 412 F.2d
28 1091, 1094 (D.C. Cir. 1968)) (emphasis added). The Ninth Circuit has declined, however, to

1  extend this duty to all pro se litigants.  *See Jacobsen v. Filler*, 790 F.2d 1362, 1364-67 (9th Cir.
2  1986)(declining to extend the *Hudson* rule because "pro se litigants in the ordinary civil case
3  should not be treated more favorably than parties with attorneys of record."); *Rand*, 154 F.3d at
4  956 (observing that the court in *Jacobsen* "refused to apply the [*Hudson* fair notice requirement] to
5  pro se non-prisoners."); *see also King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1986) ("Pro se
6  litigants must follow the same rules of procedure that govern other litigants.").  Courts apply the
7  general summary judgment standard, construing a pro se plaintiff's pleadings liberally in their
8  favor.  *See Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) ("The Supreme Court has
9  instructed federal courts to liberally construe the 'inartful pleading' of pro se litigants.") (citations
10 omitted).

**B.    DISCUSSION**

As a threshold matter, Defendants argue that Plaintiff's remaining due process claim is barred by the applicable statute of limitations.  Plaintiff counters this argument by claiming that under the doctrine of equitable tolling, his due process claim is still ripe for adjudication in federal court.  Plaintiff sues Defendants pursuant to the Federal Civil Rights Act, 42 U.S.C § 1983, *et seq*, the procedural mechanism for enforcing federal constitutional or statutory rights.  *Albright v. Oliver*, 510 U.S. 266 (1994).  Section 1983 does not contain a statue of limitations, therefore federal courts apply the statute of limitations associated with personal injury claims in the forum state.  Defendants assert Plaintiff's cause of action accrued in 2001.  The statute of limitations in California for personal injury claims at that time was one year.  Thus, Plaintiff was required to bring a cause of action under § 1983 one year from the time the he knew or had reason to know of the injury that is the basis for his action.  *In re George*, 322 F.3d 586, 591 (9th Cir. 2003) (holding that a one year statute of limitations applied to plaintiff's section 1983 takings and due process claims); *Cabrera v. City of Huntington Park*, 159 F.3d 374, 379 (9th Cir.1998).

Under California law, equitable tolling "reliev[es] plaintiff from the bar of a limitations statute when, possessing several legal remedies he, reasonably and in good faith, pursues one designed to lessen the extent of his injuries or damage."  *Addison v. California*, 21 Cal.3d 313, 317 (1978).  The Supreme Court first articulated a rationale for the doctrine of equitable tolling when it

stated, "Congress would not wish a plaintiff deprived of his rights when no policy underlying a statute of limitations is served in doing so." *Collier v. City of Pasadena* 142 Cal.App.3d 917, 923 (1983) (quoting *Burnett v. New York Central R. Co.* 380 U.S. 424, 434 (1965)). If a plaintiff is entitled to equitable tolling, "the statute of limitations period stops running during the tolling event, and begins to run again only when the tolling event has concluded". *Lantzy v. Centex Homes*, 31 Cal.4th 363, 370-371(2003). Therefore, "the tolled interval, no matter when it took place, is tacked onto the end of the limitations period, thus extending the deadline for suit by the entire length of time during which the tolling event previously occurred". *Id.* To invoke equitable tolling, the California courts require that the plaintiff satisfy a three-pronged test consisting of the following factors: 1) timely notice to the defendants in filing the first claim; 2) lack of prejudice to the defendants in gathering evidence for the second claim; and 3) good faith and reasonable conduct in filing the second claim. *Cervantes v. City of San Diego,* 5 F.3d 1273, 1275 (9th Cir. 1993). At its core, "the doctrine of equitable tolling focuses on the effect of the prior claim in warning the defendants in the subsequent claim of the need to prepare a defense". *Id.* When asserting the doctrine of equitable tolling, the burden is on the plaintiff to show that the doctrine is applicable to the facts of the case. *U.S. v. Marolf*, 173 F.3d 1213, 1218 (9thCir.1999).

The timely notice element requires that the first claim must be filed within the statutory period. More importantly, "the filing of the first claim must alert the defendant in the second claim of the need to begin investigating the facts which form the basis for the second claim." *Collier*, 142 Cal.App.3d at 924. Similarly, the second prerequisite for equitable tolling requires "that the facts of the two claims be identical or at least so similar that the defendant's investigation of the first claim will put him in a position to fairly defend the second." *Id.* at 925-926. The two causes of action need not be absolutely identical, and "the critical question is whether notice of the first claim affords the defendant an opportunity to identify the sources of evidence which might be needed to defend against the second claim." *Id.* Thus a plaintiff's argument for applying equitable tolling will fail if the asserted claim alleges a distinct wrong that was not the basis of the earlier proceeding. *Daviton v. Columbia/HCA Healthcare Corp.* (2001) 241 F.3d 1131, 1141.

Upon examining the undisputed facts of this case and the record evidence, the Court finds

1  that no reasonable jury could conclude that Plaintiff's due process claim is based upon a similar
2  wrong which should have provided Defendants with the requisite notice.  The basis for Plaintiff's
3  due process claim is the use of an alleged fraudulent map to satisfy the requirements of the
4  Subdivision Map Act section 66410 et seq. ("SMA").  The SMA requires approval by the
5  legislative body of a final subdivision map prior to off-site public improvements.  The SMA
6  attempts to facilitate orderly community development and coordinated planning with community
7  development patterns established by local authorities.  *Gardner v. County of Sonoma* 29 Cal.4th
8  990, 997-998 (2003).  Plaintiff claims that Defendants' alleged violation of the SMA, by the use of
9  a fraudulent map, equates to a violation of his constitutionally protected right to due process.
10 When Plaintiff addresses the alleged fraudulent map he does so by merely stating assertions and
11 fail to provide supportive evidence.  To rebut these allegations Defendants provide responses to
12 interrogatories, verified by a Senior Civil Engineer for the Department of Public Works, which
13 state that maps used in the EIR accurately depicted a pre-existing sewer line across the Plaintiff's
14 property.

15      Although Plaintiff alleges that he became aware of this map in 2001, he did not raise the
16 issue until January 2004 on appeal.  The record shows that Plaintiff's prior state law claims did not
17 address the alleged fraudulent map or a depravation of due process.  By Plaintiff's own admission,
18 he filed the instant federal action because this claim was not addressed previously in the state court
19 action.  In his December 2001 state case, Plaintiff referenced the subdivision map, but did not raise
20 any allegations that the map was fraudulently created.

21      Plaintiff claims that this Court preliminarily found that his state law and federal claims are
22 sufficiently similar, and thus he is entitled to tolling of the statute of limitations.  This is not an
23 accurate interpretation of the Court's prior order [Doc. No. 20].  In granting Plaintiff leave to
24 amend his complaint after the second motion to dismiss, the Court stated that Plaintiff should have
25 the opportunity to present evidence supporting his equitable tolling claim [*Id.*]. The court found
26 the matter unsuitable for disposition at the pleading stage of litigation [*Id.*].  However, Plaintiff
27 now fails to support his allegations with competent evidence and instead relies solely on
28 conclusory allegations that his federal claim is timely.

1       The focus of Plaintiff's state court complaint was not the validity of the subdivision map or
2  a violation of due process, but Defendants' alleged failure to comply with bond requirements
3  under the San Diego Code of Regulatory Ordinances.  The state court dismissed this claim as
4  barred by the statute of limitations.  In his federal complaint, Plaintiff states "this federal claim
5  draws its genesis from plaintiff's original claim against the County of San Diego predicated upon
6  California Government Code section 814.4".  However, California Government Code section 814
7  was never mentioned within Plaintiff's state law claims.  As the courts have clearly stated, "the
8  equitable tolling doctrine requires that the same wrong serve as the predicate for the earlier and
9  later proceedings to make sure defendant received proper notice." *Daviton v. Columbia/HCA*
10 *Healthcare Corp*. 241 F.3d 1131, 1141 (9th Cir. 2001)

11      Plaintiff's original state complaint named only Defendant County of San Diego and not the
12 Sanitation or Flood Control Districts as Defendants.  Plaintiff's state complaint alleged that
13 Defendant failed to satisfy bond requirements, but does not reference a fraudulent map, a coerced
14 easement, or a violation of due process.  Plaintiff amended his state complaint on April 20, 2003
15 and added a cause of action for Breach of Contract/Breach of Duty to a Third Party Beneficiary.
16 Plaintiff did not add Defendants Alpine Sanitation District or San Diego Flood Control District.
17 Plaintiff's amended state complaint did not allege any new allegations that reference a fraudulent
18 map or a violation of due process.  Plaintiff referenced the easement in the added cause of action,
19 but without any mention of coercive conduct by any of the Defendants. Plaintiff alleged that
20 Defendant County of San Diego breached a written bond agreement, along with an implied
21 covenant, when projects involving Plaintiff's property rendered the property unsuitable for use.
22 The state court dismissed this cause of action by ruling that the facts did not support a finding of
23 an implied covenant, and that the bond agreement was not intended to protect Plaintiff.  Plaintiff
24 did not plead any allegations in his state court suit which would support a cause of action under
25 Section 1983, and the record is void of any indication that Defendants should have been on timely
26 notice of any such claims.

27      The alleged violation of Plaintiff's due process rights is an independent wrong distinct
28 from the previously alleged causes of action.  Defendants could not have anticipated that the

1 validity of a map, which had been reviewed and verified by numerous state and municipal
2 authorities, would later be challenged.  Even though the record appears to show a common nucleus
3 of operative facts, this does not mean that Defendants should have anticipated all possible causes
4 of action or been on notice to conduct a completely independent investigation regarding the
5 validity of the map in question.

6 Finally, with respect to the third factor that a court must consider in equitable tolling, the
7 Court finds it difficult to conclude that Plaintiff has acted in good faith and reasonably conducted
8 himself.  By examining the history of this litigation it becomes evident that Plaintiff has taken
9 every possible measure to prolong the life of this litigation no matter the detriment to judicial
10 efficiency.  As stated above, in arguing that the statute of limitations on his federal claims should
11 be equitably tolled, Plaintiff bears the burden of proof, and has failed to provide any evidence to
12 support tolling in this case.  Conclusory allegations are insufficient.  Plaintiff's Section 1983 claim
13 is barred by the applicable one year statute of limitations and thus fails as a matter of law.

### SUPPLEMENTAL JURISDICTION

15 Based on the foregoing, there remains no federal subject matter jurisdiction and this Court
16 declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.  *See* 28
17 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a
18 claim . . . if the district court has dismissed all claims over which it has original jurisdiction."); *see*
19 *also, Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1000-1001 (9th Cir. 1997) ("in the usual case
20 in which all federal law claims are eliminated before trial, the balance of factors . . . will point
21 toward declining to exercise jurisdiction over the remaining state law claims") (quoting *Carnegie-*
22 *Mellon University v. Cohill*, 484 U.S. 343, 350, n.7 (1988).

23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

## CONCLUSION

Based on the foregoing reasons, the Court **GRANTS** Defendants' motion for summary judgment. This order disposes of all remaining claims. Accordingly, the Court requests that the Clerk of Court enter judgment in favor of defendants, close the case file, and terminate this case.

**IT IS SO ORDERED**.

DATED: June 24, 2009

*/s/ Michael M. Anello*

Hon. Michael M. Anello
United States District Judge